**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FRUCTUOSO ZAVALA-ALVAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-4041 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| DARBAR MANAGEMENT, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Fructuoso Zavala-Alvarez worked at Delhi Darbar Kabab House for 20 years. He worked long weeks – lasting 68 hours – toiling away in the kitchen for 11 or 12 hours a day. He washed dishes, prepared food, and did the thankless job of cleaning up after everyone else. That's a lot of hard work for a long period of time. And he deserved to get paid.

The amount of the work was greater than the amount of the pay. For most of his employment, Delhi Darbar paid Zavala only $450 per week in cash. That's $6.62 per hour. Near the end of his employment, Zavala's pay increased to $470 per week ($6.91 per hour) and eventually $500 per week ($7.35 per hour).

In 2019, after two decades of work, Zavala finally quit his job and sued his former employer. He brought a collection of wage and overtime claims under federal, state, and local law. He originally sued the restaurant, its owner, and two managers. He later filed an amended complaint and added claims against the new owners.

After discovery, Zavala filed a motion for summary judgment. For the reasons stated below, the motion is granted in part and denied in part.

**Background**

Delhi Darbar – "The Kabab House" – is an Indian and Pakistani restaurant located on Devon Avenue in Chicago. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶¶ 2, 13–14 (Dckt. No. 172). For out-of-towners, Devon Avenue is a treasure trove of Indian and Pakistani cuisine, and has garnered national attention. *See* James O'Shea, *Shedding Old Rivalries and Pulling Together*, N.Y. Times, Jan. 2, 2010, at A25; Neil MacFarquhar, *Pakistanis Find U.S. an Easier Fit Than Britain*, N.Y. Times, Aug. 21, 2006, at A1. It has some of the best south Asian cuisine anywhere.

Fructuoso Zavala-Alvarez worked continuously at Delhi Darbar Kabab House for 20 years, from 1998 until May 2019. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶¶ 3, 13 (Dckt. No. 172).[1] He may not have caught the attention of diners who frequented the restaurant. He

---

[1] Defendants take issue with the notion that Zavala worked continuously, citing the "affidavit" of M. Salim Moten. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 13 (Dckt. No. 172). That document has no evidentiary value. Under Local Rule 56.1, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *See* L.R. 56.1(e)(3). "Evidence offered at summary judgment must be admissible to the same extent as at trial, at least if the opposing party objects, except that testimony can be presented in the form of affidavits or transcripts of sworn testimony rather than in person." *See Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017); *see also* Fed. R. Civ. P. 56(c)(1)(A). A document doesn't count as an affidavit or declaration simply because of its title. Here, M. Salim Moten's statement was not sworn before an officer authorized to administer an oath, so it is not an affidavit. *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985). And it doesn't include the certification required by statute, meaning a certification under penalty of perjury that the information was true. *See* M. Salim Moten Aff. (Dckt. No. 171-1); *see also* M. Salim Moten Aff. (Dckt. No. 178-1) (the same deficient document attached to Defendants' statement of additional facts). So, it is not a declaration either. As a result, the Court disregards M. Salim Moten's "affidavit" because it failed to satisfy the necessary requirements. This Court will not consider any facts in Defendants' statement of additional facts supported solely by that statement. *See, e.g., G & G Closed Circuit Events, LLC v. Castillo*, 2017 WL 1079241, at *7 (N.D. Ill. 2017); *Trapaga v. Cent. States Joint Bd. Local 10*, 2007 WL 1017855, *3 (N.D. Ill. 2007); *Home Sav. of Am., F.A. v. Einhorn*, 1990 WL 114643, at *1–4 (N.D. Ill. 1990). And the Court accepts as true any properly supported fact offered by Zavala that Defendants dispute solely with the "affidavit" of M. Salim Moten. *See* Fed. R. Civ. P. 56(e)(2); L.R. 56.1(e)(3).

didn't wait tables, or seat the guests. He wasn't the face of the restaurant. Instead, he worked behind the scenes, making the place run.

Zavala was a manual laborer at Delhi Darbar. He washed dishes, cleaned bathrooms, mopped floors and hallways, took out the trash, cleaned windows, shoveled snow, and even prepared some food. *Id.* at ¶ 15. By the sound of things, he was a handy guy to have around.

He worked long days and late nights. Zavala worked from 4:00 p.m. to 3:00 a.m. every Monday, Wednesday, Thursday, and Sunday, and from 4:00 p.m. to 4:00 a.m. every Friday and Saturday. *Id.* at ¶ 14. That's 11 hours per day on weekdays, and 12 hours per day on weekends.

Working in a restaurant is hard work, as anyone who has done it knows all too well. And yet Zavala kept up that pace – day after day, week after week – for decades. He worked 68 hours a week, for 20 years. *Id.*

But Delhi Darbar didn't pay Zavala what he earned. For most of Zavala's employment, he received cash wages totaling $450 per week. *Id.* at ¶ 16. Near the end of his tenure, his cash wages increased to $470 per week, and finally to $500 per week. *Id.* So, for most of Zavala's employment, he made less than $7.00 per hour. He never made more than $7.35 per hour.

In 2019, Zavala threw in the towel, called it quits, and filed suit. He brought claims against the business, Defendant Darbar Management, Inc. (d/b/a Delhi Darbar Kabab House). He also sued the people who ran the place. Specifically, Zavala sued the owner, Irfan Moten, and two managers, Imran Moten and M. Salim Moten. *See* Cplt. (Dckt. No. 1); *see also* Defs.' Resp. to Pl.'s Statement of Facts, at ¶¶ 19, 22, 24 (Dckt. No. 172).

Zavala brought claims under federal, state, and local law, seeking compensation for his unpaid wages and overtime. Specifically, Zavala invoked the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Chicago Minimum Wage and

Paid Secure Leave Ordinance ("CMWO"). The company that owned and operated the restaurant (Darbar Management), the owner (Irfan Moten), and the managers (Imran Moten and M. Salim Moten) were Zavala's employers within the meaning of the federal, state, and local laws in question. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶¶ 17, 21, 23 (Dckt. No. 172).

Around that time, the restaurant changed ownership. Irfan Moten sold the business to Asif Rangoonwala and his company, Skaanz Enterprise, Inc. *Id.* at ¶¶ 51, 59, 62.

The new owner had strong ties to the original defendants. Irfan Moten (the old owner) and Rangoonwala (the new owner) have been close friends for over 20 years. *Id.* at ¶ 47. Rangoonwala is the son-in-law of M. Salim Moten (one of the managers). *Id.* at ¶ 49.

They hatched the plan to sell the business right around the time that Zavala left the company, and not long before Zavala filed suit. In early May 2019, Rangoonwala entered into a verbal agreement with Irfan Moten to buy the restaurant. *Id.* at ¶ 51; *see also* Rangoonwala Dep., at 46:18 – 48:20 (Dckt. No. 153-1); Rangoonwala Interrogatories, at ¶ 3(d) (Dckt. No. 153-2). Putting that date in perspective, Zavala filed suit in mid-June 2019. *See* Cplt. (Dckt. No. 1).

But Rangoonwala apparently wanted to take the business for a test drive. He agreed to run the business through September 2019, before deciding whether to buy it.[2] *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 52 (Dckt. No. 172).

Rangoonwala found out about Zavala's wage suit in July 2019, but he decided to go forward and buy the restaurant. *Id.* at ¶¶ 57–58. In September 2019, Rangoonwala incorporated Skaanz Enterprise, Inc. *Id.* at ¶ 59. That month, Skaanz "acquired the Delhi Darbar restaurant

---

[2] The testimony here tugs in different directions. At one point, Rangoonwala testified that he actually acquired an interest in the property in May 2019. *See* Rangoonwala Dep., at 52:8-23 (Dckt. No. 153-1). But elsewhere, Rangoonwala testified that he verbally agreed to buy the business in May 2019, but didn't actually buy it until September 2019. *See id.* at 46:18 – 48:20.

business and all of its assets." *Id.* at ¶ 66. As the Court understands it, the sale was an asset sale, not an acquisition of the company itself (meaning Darbar Management, the former owner).

But Skaanz didn't act like the new owner, at least not right away. Despite acquiring the business, Skaanz did not have a bank account until October 2019, and did not pay wages to the employees until the fourth quarter of 2019 or the first quarter of 2020. *Id.* at ¶¶ 63–64. And Darbar Management (the old owner) didn't act like an old owner, either. Darbar Management continued to conduct the restaurant's banking through its bank accounts. *Id.* at ¶ 63. In the meantime, some of the kitchen staff remained with the restaurant, and when Skaanz started paying them, it did so with unreported cash. *Id.* at ¶¶ 73–75.

To review, Zavala originally sued the company that owned and operated the restaurant (Darbar Management), the old owner (Irfan Moten), and its two managers (Imran Moten and M. Salim Moten). In the amended complaint, Zavala added the new owner (Rangoonwala) and his company (Skaanz) as defendants. He then amended the complaint again. *See* Second Am. Cplt. (Dckt. No. 64).

All told, Zavala sued the company, the former owner, the managers, and the new owners. Zavala amended the complaint twice, ultimately bringing eight counts under federal, state, and local law.

In Counts I–VI, Zavala alleges that Darbar Management, Irfan Moten (the old owner), Imran Moten (a manager), and M. Salim Moten (a manager) failed to pay minimum and overtime wages. Zavala brings claims under the Fair Labor Standards Act, the Illinois Minimum Wage Law (again, "IMWL"), and the Chicago Minimum Wage and Paid Secure Leave Ordinance (again, "CMWO").

The other two claims are against Rangoonwala (the new owner) and Skaanz (his company). Counts VII and VIII allege that Rangoonwala and Skaanz violated the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/6(a). The gist of those claims is that the sale was fraudulent, in law or fact, and thus can't deprive Zavala of his rights as a debtor.

The parties embarked on discovery soon after. *See* 2/17/2021 Order, at 3 (Dckt. No. 106). It didn't go smoothly. In fact, it was a bumpy ride. The Court assumes familiarity with the flurry of Orders, including the Report and Recommendation from Judge Fuentes, and later orders from this Court, too. *See* 1/25/2021 Report and Recommendation (Dckt. No. 102); 2/17/2021 Order (Dckt. No. 105); 3/5/2021 Supplemental Report and Recommendation (Dckt. No. 115); 3/8/2021 Order (Dckt. No. 116).

The punchline is that Irfan Moten (the old owner) and Darbar Management were non-responsive, evasive, and outright dishonest in their discovery responses. They produced false time cards for Zavala and destroyed necessary employee records during discovery. *See* 2/17/2021 Order, at 7 (Dckt. No. 106).

The chain of events leading to the sanction started with a motion to compel in January 2020. *See* Pl.'s Mtn. to Compel (Dckt. No. 32). In the motion, Zavala asserted that Darbar Management and Irfan Moten had failed to provide "garden-variety" discovery such as work schedules, pay rates, and contact information of co-workers. *Id.*

Judge Fuentes granted Zavala's motion to compel, ordering Darbar Management and Irfan Moten to produce time cards, time sheets, and all records of cash wages paid for the relevant period. *See* 1/16/2020 Order (Dckt. No. 40).

In response, Darbar Management and Irfan Moten represented that they had already produced the only records they had of Zavala's hours and wages – 21 pages of time cards. *See*

Time Cards (Dckt. No. 96-8). They also represented that their responses were true and correct based on their personal knowledge. *See* 2/17/2021 Order, at 3 (Dckt. No. 106).

Judge Fuentes also granted the motion to compel answers to four interrogatories. One of the interrogatories required Darbar Management and Irfan Moten to identify other kitchen workers (*i.e.*, corroborating witnesses). *See* Defs.' Answer to Pl.'s Interrogatories, at No. 1 (Dckt. No. 32-2). Other interrogatories required them to disclose how many hours Zavala worked, as well as the amount he was paid. *Id.* at Nos. 2–5. In response to the interrogatories, Defendants were less than forthcoming.

For interrogatories about Zavala's wages and hours, they responded that the "*exact* dates and times of Plaintiff's employment are contained in the production requests herein D00001-D000021." *See* Supplemental Answers to Pl.'s Interrogatories, at 2 (Dckt. No. 96-9, at 10 of 14) (emphasis added); *see also id.* at 3 ("Defendants state that they only have employment records for the Plaintiff pursuant to dates of employment contained in the production requests herein D000001-D000021.").

Those responses weren't true. The story started unraveling during the deposition of Irfan Moten, the owner. Irfan Moten testified that his brother, Imran Moten (again, one of the managers) located the time cards during a search for records, and handed them over to Irfan Moten to produce. *See* Irfan Moten Dep., at 24–25 (Dckt. No. 70-5). So, at that point, Irfan Moten testified, under oath, that the time cards were legitimate. But Irfan Moten also testified that Imran Moten had discarded time cards for other employees when they "cleaned the place" in late 2019, after Zavala had already served document requests. *Id.* at 61.

Zavala later moved for sanctions. *See* Pl.'s Mtn. for Discovery Sanctions (Dckt. No. 70). Part of the motion focused on the incomplete document production, while another part of the motion raised the destruction of documents.

Initially, Darbar Management and Irfan Moten admitted that they did not keep proper records, but denied that they had ever destroyed any business records. *See* Defs.' Resp., at 1 (Dckt. No. 78); Imran Moten Aff., at ¶ 3 (Dckt. No. 78-3). So Judge Fuentes scheduled an evidentiary hearing.

Five days before the hearing, the story unraveled even more. Defense counsel notified Zavala's counsel that the time cards were created *after* receiving the document requests. *See* 7/23/2020 Email (Dckt. No. 89-1). Defense counsel wrote that "[p]reviously before i [sic] was retained the defendants turned over copies of time sheets relating to your client. After further discussions with Darbar it turns out that the time sheets were not prepared contemporaneously, but were made up from memory at a later date. I was also assured by my clients that their previous attorney . . . was unaware of this when the time sheets were produced." *Id.*

So, instead of producing actual time cards, Irfan Moten sat around a table with Imran Moten and Salim Moten (again, the managers), and the three of them made up time cards after the lawsuit was underway. *See* 8/7/2020 Tr., at 50–66 (Dckt. No. 94). They picked numbers out of thin air, after they knew Zavala was suing them. Then they wrote them on fake time cards, and produced them in discovery, purporting to produce the real thing.

After holding a two-day evidentiary hearing, and getting to the bottom of things, Judge Fuentes issued a thoughtful, comprehensive Report and Recommendation recounting Defendants' serial non-compliance. *See* 1/25/2021 Report and Recommendation (Dckt. No. 102).

As Judge Fuentes aptly put it, "the only evidence Irfan Moten and Darbar Management have produced has been fabricated, perjurious, or tainted by their fabrication and perjury." *Id.* at 22. This Court later adopted that Report and Recommendation in its entirety and granted Zavala's motion for sanctions. *See* 2/17/2021 Order (Dckt. No. 106).

The Court sanctioned Irfan Moten and Darbar Management by holding Zavala's wage and hour claims, and his claim of FLSA enterprise liability as to Darbar Management, to be established. *Id.* at 7. The Court precluded those two Defendants from offering contrary evidence on those claims, too. In effect, the Court granted judgment to Zavala on his wage and overtime claims against Irfan Moten and Darbar Management as to liability, but still required Zavala to prove the amount of damages.

After discovery, Zavala filed a motion for summary judgment. *See* Pl.'s Mtn. for Summ. J. (Dckt. No. 151). For the reasons stated below, the Court grants Zavala's motion in part, and denies it in part. The punchline is that Zavala prevails as a matter of law on his wage and overtime claims, but the Court is deferring its consideration of the fraudulent conveyance claims.

**Legal Standard**

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond

the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## Analysis

Zavala brings two sets of claims. The first six counts are minimum wage and overtime claims. The final two counts are fraudulent conveyance claims.

The first six counts are minimum wage and overtime claims under federal law (the FLSA), state law (the IMWL), and a local ordinance (the CMWO). The sources of law are different, but the analysis is the same, so the Court will consider the first six claims together. *See Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 298 (N.D. Ill. 2010) (citing *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993)); *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010); *Vann v. Dolly, Inc.*, 2019 WL 1785589, at *2 (N.D. Ill. 2019) (assessing FLSA, IMWL, and CMWO claims together); *see also* Ill. Admin. Code tit. 56, § 210.210 (2009) (noting that FLSA regulations should guide interpretations of the IMWL).

Then, the Court will turn to the last two counts, meaning the claims against the two new owners under the Illinois Uniform Fraudulent Transfer Act.

## I. Minimum Wage and Overtime (Counts I–VI)

Zavala's first six counts are minimum wage and overtime claims against Darbar Management, Irfan Moten (the old owner), Imran Moten (the manager), and M. Salim Moten (the other manager). He claims that Delhi Darbar didn't pay him the minimum wages or overtime that he earned. Zavala also seeks to hold Rangoonwala and Skaanz liable under a theory of successor liability.

"In 1938, Congress enacted the FLSA to provide employees '[a] fair day's pay for a fair day's work.'" *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 735 F.3d 568, 570 (7th Cir. 2013) (quoting *Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). To achieve this goal, the FLSA has two core provisions. One covers the minimum wage, and the other covers overtime.

The FLSA requires employers to pay their employees a federal minimum hourly wage. *See* 29 U.S.C. § 206(a)(1). And it requires employers to pay an overtime rate of at least one and one-half times the employee's regular wage for any hours worked over 40 hours in one week. *See* 29 U.S.C. § 207(a).

The state of Illinois and the city of Chicago have parallel minimum wage and overtime requirements under a state statute (the IMWL) and a local ordinance (the CMWO), respectively. *See* 820 ILCS 105/4 (Illinois minimum wage); 820 ILCS 105/4a (Illinois overtime compensation); Chicago Mun. Code § 6-105-020 (Chicago minimum wage); Chicago Mun. Code § 6-105-040 (Chicago overtime compensation).

Federal, state, and local law each establish a different minimum wage. That is, the federal minimum wage is different than the Illinois minimum wage, which is different than the Chicago minimum wage. It's different across the country.

11

Some states and localities (like Illinois and Chicago) have a higher minimum wage than the federal government. Different levels of government have built different floors for pay. The floor you're on depends on where you are.

When an employee is subject to federal, state, and municipal minimum wage laws, the employee is entitled to the highest of the minimum wages. *See* 29 U.S.C. § 218(a). Each source of law sets a different floor. There are three floors, and the employee is entitled to the highest floor.

During the relevant period, the minimum wage under the Chicago ordinance was higher than the minimum wage under federal or state law. The Chicago wage ranged from $10.00 to $12.00 per hour, so it controls. *Id.*; *see also* Nolan Dec., at ¶ 5 (Dckt. No. 153-13).

Courts analyze wage claims under the three sources of law the same way, because the requirements of each are basically the same. *See Driver*, 265 F.R.D. at 298 (citing *Condo*, 1 F.3d at 601 n.3); *Urnikis-Negro*, 616 F.3d at 672 n.3; *Vann*, 2019 WL 1785589, at *2. In other words, if a plaintiff prevails under the FLSA, the plaintiff prevails under the IMWL and the CMWO as well.

The FLSA requires employers to comply with its minimum wage and overtime requirements when paying employees. *See* 29 U.S.C. §§ 206, 207. The parties agree that Zavala qualifies as an employee, and that Defendants qualify as "employers" or as an "enterprise engaged in commerce" within the meaning of the Act. *See Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1074–75 (N.D. Ill. 2014); *see also* Defs.' Resp. to Pl.'s Statement of Facts, at ¶¶ 17–26 (Dckt. No. 172). The parties also agree that no exemption applies. So the FLSA governs.

To prevail, an employee must come forward with evidence about how much he or she worked, and how much he or she got paid. "[A]n employee who brings suit pursuant to FLSA 'has the burden of proving that he performed work for which he was not properly compensated.'" *Melton v. Tippecanoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded on other grounds by* Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251–62).

Employers cannot skirt their responsibilities by bad record-keeping. The Act closes any loophole for employers who fail to keep accurate records of the work by their employees. "Where the employee alleges that his employer kept inaccurate records, he 'has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Id.* (quoting *Anderson*, 328 U.S. at 687); *see also Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010).

"At that point, '[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Melton*, 838 F.3d at 818 (quoting *Anderson*, 328 U.S. at 687–88). "If the employer fails to meet that burden, a court may award damages even though they are approximations." *Brown*, 534 F.3d at 595.

With those standards in mind, the Court will walk through Zavala's claims against the Defendants.

A.    The Claims against Darbar Management and Irfan Moten (the Owner)

There is no dispute that Darbar Management and Irfan Moten have liability for Zavala's minimum wage and overtime claims. In fact, they concede the point. *See* Defs.' Resp., at 3 (Dckt. No. 171).

Recall, Darbar Management and Irfan Moten destroyed and falsified records about Zavala's employment, as explained in the discovery Orders. *See* 2/17/2021 Order, at 7 (Dckt. No. 106). The Court basically ruled that Darbar Management and Irfan Moten were liable for Zavala's minimum wage and overtime claims. The Court precluded them from presenting any evidence about Zavala's hours, wages, work schedule, or terms of employment. *Id.* at 7–8.

The destruction and falsification of evidence undermined the truth-seeking function of litigation. By destroying records, Defendants interfered with the ability of Zavala to tell a true story about how much he worked. By creating phony evidence, Defendants put forward a false story about how much he worked. Defendants doubled down on deceit – they prevented a truthful story, and told a false one.

In his motion for summary judgment, Zavala presented evidence about how much he worked, and how much he earned. Specifically, Zavala reasonably estimated that he worked at least 10,313 hours during the three years preceding the lawsuit, including at least 4,233 hours above and beyond 40 hours a week. *See* Pl.'s Mem., at 3 (Dckt. No. 154-1); Defs.' Resp. to Pl.'s Statement of Facts, at ¶¶ 14, 16, 34–38 (Dckt. No. 172) (offering a blanket denial, and citing only the "affidavit" of M. Salim Moten). That's a grand total of $69,408. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 38.

Zavala supported his claim with admissible evidence. True, his evidence is an estimate, not an exact calculation. But the FLSA does not require exactitude, especially when the

employer has prevented exactitude by destroying files.  *See Lee v. Hanjin Intermodal Am., Inc.*
2021 WL 534661, at \*5 (N.D. Ill. 2021); *Bum Hoon Lee v. BK Schaumburg Inc.*, 2020 WL
3577994, at \*5 (N.D. Ill. 2020) ("[A]n FLSA plaintiff need not provide documentary evidence or
definitive calculations of hours worked – his or her own testimony based on memory is enough
to survive summary judgment if it is sufficiently specific."); *Melton*, 838 F.3d at 818.

Plaintiffs may use "triggering factors" to help them recall when they worked overtime.
*See Brown*, 534 F.3d at 597–98; *see also Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775
(7th Cir. 2013) (noting that an employee could reconstruct unreported time "from memory,
inferred from the particulars of the jobs the [employee] did, or estimated in other ways").  And
they can rely on approximations.  *See Lee*, 2021 WL 534661, at \*5.  But a plaintiff may not rely
on speculation alone.  *Id.*

Zavala's evidence is not mere speculation.  He testified based on his best recollection,
and offered a fair amount of specificity.  His evidence is sufficient "to show the amount and
extent of [his undercompensated] work as a matter of just and reasonable inference."  *See
Melton*, 838 F.3d at 818.

Defendants take issue with Zavala's evidence, especially his deposition testimony, calling
it "self-serving."  *See* Defs.' Resp., at 4 (Dckt. No. 171).  When it comes to objections, that's not
a thing.  It's an epithet, not an objection.  Human nature does not change on the witness stand.
People tend to be self serving, and so does their testimony.  But that's not a reason to reject
either one of them.  *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (reiterating that a
party cannot "denigrate perfectly admissible evidence through which a party tries to present its
side of the story at summary judgment" by calling it "self serving").

The Court grants Zavala's motion for summary judgment on Counts I–VI against Darbar Management and Irfan Moten. At this point, the Court is addressing liability only. The amount of the damages comes later.

### B. The Claims against Imran Moten and M. Salim Moten (the Managers)

The Court's Order about discovery did not cover the two managers, Imran Moten and M. Salim Moten. They argue that there is a disputed question of fact about Zavala's minimum wage and overtime claims. *See* Defs.' Resp., at 4–5 (Dckt. No. 171). Specifically, they contend that the affidavit of M. Salim Moten raised a genuine issue of material fact about Zavala's hours and wages. *Id.* at 5.

That argument suffers from a lack of evidence. The two Defendants purport to rely on the "affidavit" of M. Salim Moten. *Id.*; *see also* M. Salim Moten Aff. (Dckt. No. 171-1). But it isn't an affidavit. And it isn't a declaration, either. It's just a piece of paper.

A party can support or oppose a motion for summary judgment by offering an affidavit or declaration. *See* Fed. R. Civ. P. 56(c)(1)(A); *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017) ("Evidence offered at summary judgment must be admissible to the same extent as at trial, at least if the opposing party objects, except that testimony can be presented in the form of affidavits or transcripts of sworn testimony rather than in person."). Affidavits and declarations are an out-of-court preview about what in-court testimony would be.

Affidavits and declarations have well-known requirements. An affidavit must be sworn before an officer authorized to administer an oath, such as a notary public. *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985); *see also G & G Closed Circuit Events, LLC v. Castillo*, 2017 WL 1079241, at *7 (N.D. Ill. 2017). Unlike an affidavit, a declaration is not a sworn document. Instead, a declaration must contain a statement, in "substantially the following form," that

certifies "under penalty of perjury" that the information is "true." *See* 28 U.S.C. § 1746. The statute spoon-feeds the magic words: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." *Id.*; *see also Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011).

It does not matter what a document is called. If a statement does not meet the requirements for an affidavit or a declaration, then it isn't an affidavit or a declaration. The label doesn't control. The package, not the packaging, is what matters.

The so-called "affidavit" of M. Salim Moten does not satisfy the requirements for an affidavit or a declaration. *See* M. Salim Moten Aff. (Dckt. No. 171-1); *see also* M. Salim Moten Aff. (Dckt. No. 178-1) (the same deficient document). It is not sworn, so it is not an affidavit. And it does not include the certification under penalty of perjury, as required by statute, so it is not a declaration, either.

An unsworn statement that lacks a certification under penalty of perjury has no evidentiary value (unless it is used *against* that person, like a statement of a party opponent). From an evidentiary standpoint, it's weightless. So the Court disregards it. *See Doherty v. Fed. Deposit Ins. Corp.*, 2022 WL 888937, at *3 (N.D. Ill. 2022) (disregarding an "affidavit" because the document "qualifies neither as an affidavit nor an unsworn declaration because it lacks both a notary's seal and a statement (a.k.a., jurat) subjecting Doherty to the penalties of perjury").

The "affidavit" has no structural value when building Defendants' side of the story. It can't support anything. Defendants cannot put any weight on it when responding to Plaintiff's statement of additional facts. And Defendants cannot rely on it when offering their statement of additional facts. *See, e.g.*, *G & G Closed Circuit Events*, 2017 WL 1079241, at *7; *Trapaga*,

17

2007 WL 1017855 at *3; *Home Sav. of Am., F.A. v. Einhorn*, 1990 WL 114643, at *1–4 (N.D. Ill. 1990). You can't beat something with nothing, and here, that statement counts for nothing.

In sum, the Court will accept as true any properly supported facts offered by Zavala that Defendants oppose with this affidavit (only). *See* Fed. R. Civ. P. 56(e)(2); L.R. 56.1(e)(3). And the Court will not accept any additional facts offered by Defendants based on this affidavit.

Without that affidavit, Defendants' evidentiary cupboard is completely bare. M. Salim Moten and Imran Moten don't provide any other evidence to dispute Zavala's facts about his hours and his wages.

There is no genuine issue of material fact. Zavala carried his evidentiary burden, and Defendants offered nothing of any weight on the other side of the scale. The Court grants summary judgment to Zavala on Counts I–VI against the two managers, Imran Moten and M. Salim Moten.

### C. The Claims against Rangoonwala and Skaanz

Zavala also seeks to hold the new owners, Rangoonwala and Skaanz (his company), liable for his minimum wage and overtime compensation claims under a theory of successor liability. *See* Pl.'s Mem., at 11–15 (Dckt. No. 154-1).

A business cannot wash its hands of the obligation to pay its employees by changing hands. "Successor liability, a longstanding doctrine of federal common law, provides 'the default rule in suits to enforce federal labor or employment laws,' including the FLSA." *Pfefferkorn v. Primesource Health Grp., LLC*, 2018 WL 828001, at *6 (N.D. Ill. 2018) (quoting *Teed v. Thomas & Betts Power Sols., LLC*, 711 F.3d 763, 769 (7th Cir. 2013)); *see also Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1326–27 (7th Cir. 1990). "Without it, 'the victim of the illegal employment practice is helpless to

protect his rights against an employer's change in the business.'" *EEOC v. N. Star Hosp., Inc.*, 777 F.3d 898, 901–02 (7th Cir. 2015) (quoting *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 746 (7th Cir. 1985)). "Where the successor has notice of a predecessor's liability, there is a presumption in favor of finding successor liability." *Id.*

The two new owners make three arguments against successor liability.

First, Defendants argue that Zavala did not plead successor liability in his complaint. That's true, as far as it goes. But it does not get Rangoonwala and Skaanz very far.

Rule 8 does require a complaint to contain a "demand for the relief sought, which may include relief in the alternative or different types of relief." *See* Fed. R. Civ. 8(a)(3). That requirement is an important part of notice pleading. Before a court awards relief against someone, that party needs to hear about it first.

But there is a difference between a request for relief and a cause of action. Successor liability is a theory of liability, not a claim. *See Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 780 (N.D. Ill. 2015). The Seventh Circuit has "stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery." *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Successor liability is a basis for holding someone responsible for someone else's liability. Basically, it's a reason why someone else should hold the bag and foot the bill.

From a notice standpoint, it makes sense to give the would-be successor notice in the complaint before tagging that successor with liability. Here, the complaint does not include any allegation about successor liability – at least not in Counts I–VI, that is. But that omission is not material. It is abundantly clear from the filings as a whole that Zavala is attempting to hold the new owners responsible for the liabilities of the old owners. In fact, that's exactly what Plaintiff

seeks in the two fraudulent conveyance claims. *See, e.g.*, Second Am. Cplt., at Counts VII, VIII (Dckt. No. 64) (requesting, in the fraudulent conveyance counts, that Rangoonwala and Skaanz "pay Plaintiff the sum of any judgment obtained" in Counts I–VI).

As a result, the Court orders the following fix, to the extent that anything needs fixing. The Court grants Zavala leave to file an amended complaint. The amended complaint can make express in the pleading what Zavala has alleged implicitly all along. That is, the amended complaint can allege that the new owners (Rangoonwala and Skaanz) are the successors of the old owner (Irfan Moten). And in the request for relief for Counts I–VI, the amended complaint can include a sentence seeking successor liability. It's not too late to amend the complaint, because amendments take place even after trial. *See* Fed. R. Civ. P. 15(a), 15(b).

Second, Defendants argue that Rangoonwala cannot be held liable as a successor because there is no evidence that he received an interest in the restaurant individually. *See* Defs.' Resp., at 6–8 (Dckt. No. 171). "[T]he [Seventh Circuit in] *Teed* [] clearly premised its application of the successor liability doctrine on some type of purchase or sale of assets between the predecessor and successor having taken place." *See Valerio v. Total Taxi Repair & Body Shop, LLC*, 2015 WL 3962573, at *2 (N.D. Ill. 2015). According to Defendants, "there was no transfer of interest from either Defendants Irfan Moten and Darbar Management, Inc. to Rangoonwala, individually." *See* Defs.' Resp., at 7.

But Defendants ignore Rangoonwala's deposition testimony where he admitted that he acquired an interest in Delhi Darbar in May 2019:

> Q:     Are you telling me that you, Asif Rangoonwala, owned the Delhi
>          Darbar Kabab House restaurant in your own individual capacity?
>
> A:     Yes, you can say that.

20

> Q: No, I am asking you to say that. Yes or no? Did you or did you not?
>
> A: In – yes.
>
> Q: Tell me the date you acquired it.
>
> A: It was either the first or second week of May. I cannot tell you the exact date, Tim.
>
> Q: Did you transfer the business after that to Skaanz?
>
> A: Yes.

*See* Rangoonwala Dep., at 52:8-23 (Dckt. No. 153-1). In fact, Rangoonwala later testified that he owned Delhi Darbar between May 2019 and September 2019, when he incorporated Skaanz:

> Q: If there was no Skaanz corporation prior to September 30, 2019, who, to your understanding, owned the Delhi Darbar Kabab House restaurant between May of 2019 and September 30, 2019?
>
> A: Asif Rangoonwala.

*Id.* at 59:11-16. So, Rangoonwala acquired an interest in Delhi Darbar, and can also be liable as a successor in interest.

Third, Defendants argue that there are questions of fact about predecessor and successor ability to pay that preclude summary judgment. *See* Defs.' Resp., at 8–10 (Dckt. No. 171). For an FLSA claim, successor liability turns on a five-factor test: (1) whether the successor had notice of the pending lawsuit; (2) whether the predecessor could have provided the relief sought before the sale or dissolution; (3) whether the predecessor could have provided relief after the sale or dissolution; (4) whether the successor can provide the relief sought; and (5) whether there is continuity between the operations and work force of the predecessor and successor. *See Teed*, 711 F.3d at 765–66; *see also N. Star*, 777 F.3d at 902.

Here, all of the factors weigh in favor of successor liability.

First, Defendants admit that Rangoonwala and Skaanz had notice of the pending lawsuit. *See* Defs.' Resp., at 8 (Dckt. No. 171). This factor creates a presumption in favor of finding successor liability. *See N. Star*, 777 F.3d at 902.

Second, the parties agree that Delhi Darbar could have provided relief before the sale. *See* Defs.' Resp., at 9 (Dckt. No. 171) ("The restaurant was profitable in the last quarter of 2019, so there is a reasonable inference that Darbar Management, Inc. was profitable before September 2019."); Pl.'s Reply, at 7–8 (Dckt. No. 176). Defendants believe that Delhi Darbar's ability to pay before the sale favors a finding of no successor liability, but they are mistaken. *See Teed*, 711 F.3d at 765. Instead, factor two weighs in favor of successor liability. *Id.*

Third, it is undisputed that Darbar Management and Irfan Moten (the prior owners) could not provide relief after the sale. Defendants cursorily say that "whether Darbar Management has sufficient funds to pay the relief requested, and therefore, [is] able to provide the relief Plaintiff requests, remains to be seen." *See* Defs.' Resp., at 9 (Dckt. No. 171). But Defendants admit that Irfan Moten filed for bankruptcy after the transfer. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶ 9 (Dckt. No. 172).[3] And they admit that Delhi Darbar was the only business that Darbar Management owned or operated, that Darbar Management transferred the entire business and its assets to Skaanz, and that after the transfer Darbar Management is out of business, insolvent, and

---

[3] The parties do not address what implications, if any, the bankruptcy of Irfan Moten had on his liabilities in this case. The parties do not discuss whether an FLSA claim is dischargeable, and if so, whether he received a discharge for the wage and overtime claims of Zavala. This Court declines to fill the void by doing its own research. *See Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) ("It is not our job to do the legal research that [a party] has omitted."); *MBM Holdings LLC v. City of Glendale*, 843 F. App'x 5, 8–9 (7th Cir. 2021) ("Litigants and lawyers who 'do not do their legal research until after losing in the district court have wasted a judge's valuable time.'") (citation omitted); *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them.").

has no assets. *Id.* at ¶¶ 66, 68–69. So, there is no dispute that the predecessors could not have provided the relief sought after the sale either. Factor three weighs in favor of successor liability.

Fourth, Defendants argue that there is a question of fact about whether the successors can provide relief to Zavala. *See* Defs.' Resp., at 9 (Dckt. No. 171). They admit that Delhi Darbar was profitable in 2019 and early 2020, but then posit, without providing any support, that the COVID-19 pandemic "slowed down operations for many businesses." *Id.*

Notice, Defendants do not argue that the pandemic slowed down Delhi Darbar's business. Instead, they argue that COVID-19 slowed down businesses generally. And they do not provide any evidence to suggest that Skaanz is insolvent or otherwise unable to provide relief to Zavala. In fact, the record includes evidence that Skaanz was a profitable business after it acquired Delhi Darbar, distributing profits to Rangoonwala. *See* Defs.' Resp. to Pl.'s Statement of Facts, at 70–71 (Dckt. No. 172). As a result, there is no dispute that that Skaanz and Rangoonwala can provide relief to Zavala, weighing in favor of successor liability.

Finally, for factor five, the parties agree that there is continuity between the operations and work force of the predecessor and successor. *See* Defs.' Resp., at 9 (Dckt. No. 171). The Kabab House changed hands, but didn't skip a beat.

In sum, there is no genuine dispute of material fact that all five factors weigh in favor of successor liability. As a result, Skaanz and Rangoonwala are liable as successors in interest.

### D. Damages

With liability established, the Court turns to calculating damages. To calculate actual damages, Zavala submitted evidence detailing his hours worked and wages paid. *See* 2/17/2021 Order (Dckt. No. 152-5); Zavala Dep. (Dckt. No. 152-6). He attached a declaration calculating

his damages, in addition to a detailed spreadsheet. *See* Nolan Dec. (Dckt. No. 153-13); Damages Spreadsheet (Dckt. No. 153-13, at 5 of 9).

Zavala calculates that Defendants owe him $69,408 in unpaid minimum wages and overtime premiums. *See* Pl.'s Statement of Facts, at ¶ 38 (Dckt. No. 152). The accompanying declarations explain the math. Basically, the amount owed in any particular week varied over time, because the minimum wage changed.

For example, Zavala was owed $370 per week from June 26 to July 3, 2016. *Id.* at ¶ 37. He was owed $411 per week from July 10, 2016 to July 2, 2017, and was owed $452 per week from July 9, 2017 to July 1, 2018. *Id.* And so on. All told, the amount owed totals $69,408 from June 26, 2016 through May 26, 2019. *Id.* at ¶ 38.

Defendants take issue with the amount. But they don't fault the math, and they offer no evidence to support their denial. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶¶ 37–40 (Dckt. No. 172). Under the Local Rules, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *See* L.R. 56.1(e)(3).

Defendants did not offer evidence that called into question Zavala's calculations. And they did not offer a competing calculation, either. So Zavala's damages calculations are unrebutted. *See Perez*, 55 F. Supp. 3d at 1080. Based on the undisputed facts, the Court adopts Zavala's calculations of $69,408 in unpaid wages and overtime.

Additionally, Zavala seeks liquidated damages equal to the amount of unpaid minimum wages and overtime compensation. The FLSA requires plaintiffs to receive "an additional equal amount" as liquidated damages. *See* 29 U.S.C. § 216(b). "Under FLSA, liquidated damages are

24

mandatory, unless the trial court determines that the employer, while acting in good faith, reasonably believed that its conduct was consistent with the law." *Jackson v. Go-Tane Servs.*, 56 F. App'x. 267, 273 (7th Cir. 2003); *see also Perez*, 55 F. Supp. 3d at 1080. Good faith is an affirmative defense that Defendants neither pleaded nor proved. *See Jackson*, 56 F. App'x at 273.

And even if they did, Defendants have not provided any basis to believe that they acted in good faith or with a reasonable belief that they complied with the FLSA. Defendants failed to pay Zavala the minimum wage or overtime compensation. They paid all of his wages in cash, and never made any of the required withholding or agency deposits for the cash payments. *See* Defs.' Resp. to Pl.'s Statement of Facts, at ¶¶ 42–44 (Dckt. No. 172). They played fast and loose for years on end, and it is now time to pay the piper (and Zavala).

In addition, after Zavala filed suit, Irfan Moten and Darbar Management responded in a highly deceptive manner during discovery. They were non-responsive and evasive in response to run-of-the-mill discovery requests. And when Zavala continued to press for information, Irfan Moten and Darbar Management provided false testimony, produced fake records, and told a phony story. *See* 2/17/2021 Order (Dckt. No. 106). As a result, the Court concludes that an award of liquidated damages in the amount of $69,408 is appropriate.

The CMWO also includes a trebling provision for wage violations. Section 6-105-110 provides that "[i]f any Covered Employee is paid by the Covered Employee's Employer less than the Wage to which the Covered Employee is entitled under this chapter, the Covered Employee may recover in a civil action three times the amount of any such underpayment, together with costs and such reasonable attorney's fees as the court allows." *See* Chicago Mun. Code § 6-105-110.

25

Defendants do not oppose Zavala's request for treble damages. In fact, they do not make any arguments about Zavala's request for treble damages. *See* Defs.' Resp. (Dckt. No. 171). So, in addition to his unpaid minimum wage and overtime compensation and liquidated damages under the FLSA, the Court awards an additional $69,408 against Defendants Irfan Moten, Darbar Management, Imran Moten, and M. Salim Moten. In its discretion, based on the undisputed facts in the record, the Court adds a one-time amount (not a three-times amount) under the Chicago Municipal Code, given the extraordinary failure to pay Zavala his hard-earned wages over an extended period of time.

Putting these numbers together, the Court awards Zavala $208,224 from Defendants Irfan Moten, Darbar Management, Imran Moten, and M. Salim Moten. This number includes his unpaid minimum wage and overtime compensation ($69,408), liquidated damages under the FLSA ($69,408), and damages under the Chicago Municipal Code ($69,408).

Finally, Zavala seeks statutory interest under the IMWL. "Illinois penalty interest is likewise 'mandatory' under the IMWL, and must be awarded in addition to FLSA liquidated damages." *See Burton v. DRAS Partners, Inc.*, 2019 WL 5550579, at *5 (N.D. Ill. 2019) (quoting 820 ILCS 105/12(a)); *see also Schneider v. Cornerstone Pints, Inc.*, 2016 WL 278813, at *1 (N.D. Ill. 2016) ("The two-percent penalty is mandatory and not duplicative of the FLSA's liquidated damages provision."). Illinois law provided for 2% per month penalty interest until February 19, 2019. Since that time, state law provides for 5% per month penalty interest. *Compare* 820 ILCS 105/12(a) (2006) (stating an interest rate of 2%), *with* 820 ILCS 105/12(a) (2019) (increasing the interest rate to 5%).

The Court agrees with Zavala's statutory interest calculations, and Defendants have not opposed them. The Court directs Zavala to submit updated calculations, with interest running through the date of this Order, within two weeks.

## II.  Fraudulent Transfer Claims (Counts VII–VIII)

Zavala also moved for summary judgment on the last two claims, both of which fall under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"). *See* 740 ILCS 160. Zavala basically challenges the sale of the business, claiming that the transfer should not frustrate his ability to recover what he is owed.

But before going down that path, and reviewing those claims, the Court pauses to take stock of where things stand. Zavala has prevailed on the first six claims against the old owners (Darbar Management and Irfan Moten) and the managers (Imran Moten and M. Salim Moten). And he has prevailed against the new owners (Rangoonwala and Skaanz), too, under a theory of successor liability. On the first six counts, Zavala ran the table.

But two more claims remain on the table. Zavala brings two fraudulent conveyance claims against Rangoonwala and Skaanz. In one claim, he alleges that the sale was fraudulent in law, and in the other claim, he alleges that the sale was fraudulent in fact.

Specifically, in Count VII, Zavala alleges that the conveyance of the business from the old owners to the new owners was fraudulent in law. *See* 740 ILCS 160/6(a). "[A] transfer is fraudulent as to a creditor [under Section 6(a)] if: (1) the creditor's claim arose before the transfer; (2) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transferred property; and (3) the debtor was either insolvent at the time of the transfer or became insolvent as a result of the transfer." *Heartland Bank & Tr. Co. v. Goers*,

27

2013 WL 5593521, at *5 (2013) (citing 740 ILCS 160/6(a)); *see also Armada (Singapore) PTE Ltd. v. AMCOL Int'l Corp.*, 2013 WL 5781845, at *4 (N.D. Ill. 2013).

In Count VIII, Zavala alleges that the conveyance of the restaurant was fraudulent in fact. *See* 740 ILCS 160/5(a)(1). "Fraud in fact occurs when a debtor makes a transfer with the [actual] intent to hinder, delay, or defraud creditors." *DAN Joint Venture III, L.P. v. Touris*, 598 B.R. 430, 441 (N.D. Ill. 2019) (cleaned up).

It is not clear what else, if anything, Zavala could accomplish by bringing those two claims. After all, this Court has already held that the new owners are on the hook in light of successor liability. Rangoonwala and Skaanz have to pay the actual damages and the liquidated damages. So, from Zavala's standpoint, one would think it is mission accomplished.

If anything, the two additional claims might be counter-productive. In Counts VII and VIII, Zavala seeks a finding that the transfer of the business "was fraudulent." *See* Second Am. Cplt., at Counts VII, VIII (Dckt. No. 64). Zavala also seeks an order "voiding the transfer in order to satisfy any judgment entered in favor of the Plaintiff on Counts I-VI." *Id.* But if the Court voids the transfer to the new owners, do the new owners continue to have successor liability? Can the new owners have the liabilities of the business, if this Court voids the sale of the business?

The parties did not address the issue, and the Court did not perform independent research. *See Econ. Folding Box Corp.*, 515 F.3d at 721. Still, it is not entirely clear if Zavala would gain anything from the two new claims. They might be redundant, and they might create dissonance with the existence of successor liability.

The new claims might delay the entry of judgment, too. Suppose this Court were to hold that there are genuine issues of material fact on Counts VII or VIII. In that case, the Court would need to preside over a trial, which would take significant time and resources. To what end?

There is another possible alternative. If Zavala voluntarily dismissed Counts VII and VIII without prejudice, the Court could enter final judgment on Counts I–VI. In that case, Zavala would have an enforceable judgment against all Defendants.

As a result, the Court is reluctant to walk through the analysis for the last two claims, without first hitting the pause button. The Court will set a hearing by separate order, and the Court will raise how Zavala wishes to proceed. The parties should be prepared to discuss next steps. Maybe there is a reason to include Counts VII and VIII. But if so, Plaintiff's counsel should explain what that reason is.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiff Zavala's motion for summary judgment. The Court grants Zavala's motion for summary judgment on Counts I–VI against all six Defendants. The Court denies Zavala's motion for summary judgment on Counts VII and VIII without prejudice, pending the upcoming discussion with the parties. If Zavala decides to proceed on those two claims, he can renew his motion for summary judgment if he chooses to do so. In the meantime, the Court directs Zavala to submit updated information about damages (including statutory interest) within two weeks.

Date: July 26, 2022

_____
Steven C. Seeger
United States District Judge